UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

UTKU BALABAN, individually and as
Business Agent, Graduate Student Employees
Union, SUNY, Binghamton,

                         Plaintiff,

         v.                                          3:09-cv-372

LOCAL 1104, COMMUNICATIONS WORKERS
OF AMERICA,

                         Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

THOMAS J. McAVOY
Senior United States District Judge

## DECISION and ORDER

       Plaintiff Utku Balaban commenced the instant action against Defendant Local

1104, Communications Workers of America alleging violations of the Labor-Management

Reporting and Disclosure Act, 29 U.S.C. §§ 411 and 529, and the Union's constitution and

bylaws.  Presently before the Court is Defendant's motion, and Plaintiff's cross-motion, for

summary judgment pursuant to Fed. R. Civ. P. 56.

**I.       FACTS**

       Plaintiff is an international student who works as a teaching assistant at the State

University of New York at Binghamton, New York.  Defendant Local 1104, Communications

Workers of America (the "Union" or "CWA") is a labor organization representing employees in

the private and public sector.  The public sector members include graduate and teaching

assistants within the State University of New York ("SUNY").  The public sector members

belong to the Education Division of Local 1104, which is referred to as the Graduate Student

Employees Union ("GSEU").  Graduate student employees are represented by the Local

1104 President, the Executive Vice President for the Education Division, five business agents

(one each from several SUNY schools, including SUNY Binghamton), and four chief

stewards.

      **a.**       **Stipends**

Plaintiff was a member of Local 1104.  On December 1, 2008, Plaintiff was elected

for a three-year term as business agent for the SUNY Binghamton campus.  Business agents

receive a $1,200 monthly stipend.  The stipend is not dependent upon the number of hours a

business agent works.  To receive the stipend, business agents must complete a weekly

schedule that shows the kind of activities in which they engage.  Defendant provides forms

for this purpose.

Upon taking office as a business agent, Plaintiff declined to submit weekly

schedules.  Plaintiff claimed that providing the schedules would violate federal immigration

laws limiting the number of hours per week that foreign students may work.  Defendant

responded to Plaintiff that submission of the schedules was a prerequisite to receiving the

stipend.  Plaintiff refused to submit the schedules and Defendant refused to pay the stipend.

Defendant did reimburse Plaintiff for all expenses for which he submitted vouchers.

On March 17, 2009, Plaintiff appealed Local 1004's decision to withhold his stipend

pending submission of his weekly schedules.  On May 12, 2009, Local 1104's Executive

Board denied Plaintiff's appeal.  On May 18, 2009, Plaintiff advised that he would comply

with the May 12, 2009 decision and submitted his weekly schedules.  On June 9, 2009, Local

1104 advised Plaintiff that his stipends would be paid for the period from December 15, 2008

through April 13, 2009, the date of his suspension.  Local 1104 paid Plaintiff his stipends.

Plaintiff has not further appealed Local 1104's actions concerning the stipends.[1]

### b.      Suspension from Union Membership

On February 13, 2009, Plaintiff went to Defendant's office in Binghamton, New

York to obtain membership cards.  While there, he is alleged to have physically assaulted

Executive Vice President Kathleen Sims by shoving her into a wall and punching her in the

shoulder.  This conduct resulted in criminal charges against Plaintiff.  The Binghamton City

Court issued an order of protection to Sims and Defendant's Administrative Assistant Tina

Traska against Plaintiff.  This conduct also resulted in Sims filing internal Union charges

against Plaintiff.

By letter dated March 3, 2009, Plaintiff was suspended from his duties as business

agent.[2]  On March 10, 2009, Plaintiff was supplied with a copy of the Union charges against

him.  Plaintiff was advised that Dennis Telford had been appointed as the prosecutor under

the CWA Constitution and had determined that probable cause existed to proceed with a

Union trial.  A Union trial was scheduled for March 25, 2009.  At Plaintiff's request, the trial

was adjourned to April 13, 2009.  Plaintiff sought a further adjournment because he felt that

his presence at the trial would violate the order of protection and that he had a right to attend

the trial.  The request for a further adjournment was denied.  The April 13, 2009 trial was held

in Plaintiff's absence.  The prosecutor submitted, among other things, the testimony of Sims

---

[1] Defendant withheld one week's payment that it will give Plaintiff once he returns certain
Union materials in his possession.

[2] Although the Court previously noted that there was a question whether Plaintiff was afforded
his rights in connection with this suspension, there is no evidence in the record that he ever filed an
internal grievance/appeal of the issue.  Accordingly, there is no basis upon which to conclude that he
exhausted his internal remedies on this issue.

and certain documentary evidence substantiating the charges against Plaintiff.  Plaintiff

submitted a written defense that was placed into the trial record.  After trial, Plaintiff was

found guilty of the charge.  The trial court imposed a seven year Union suspension as a

penalty.  The trial court allowed Plaintiff an indefinite amount of time to request that the

matter be reopened in the future so that he could appear on his own behalf, submit additional

evidence, and/or cross-examine witnesses.  Plaintiff has not requested that the matter be re-

opened.

       On May 4, 2009, Plaintiff appealed the decision of the trial court.  On June 3, 2009,

the Local 1104's Executive Board sustained the trial court's determination, but lowered the

suspension to a four year period.  On June 29, 2009, Plaintiff appealed the decision of the

Executive Board to the Secretary-Treasurer of CWA.  That appeal is pending.

## II.      STANDARD OF REVIEW

       Rule 56 of the Federal Rules of Civil Procedures governs motions for summary

judgment.  It is well settled that on a motion for summary judgment, the Court must construe

the evidence in the light most favorable to the non-moving party, see Tenenbaum v.

Williams, 193 F.3d 581, 593 (2d Cir. 1999), and may grant summary judgment only where

"there is no genuine issue as to any material fact and . . . the moving party is entitled to

judgment as a matter of law."  Fed. R. Civ. P. 56( c).  An issue is genuine if the relevant

evidence is such that a reasonable jury could return a verdict for the nonmoving party.

Anderson v. Liberty Lobby, 477 U.S. 242, 248 (1986).  A party seeking summary judgment

bears the burden of informing the court of the basis for the motion and of identifying those

portions of the record that the moving party believes demonstrate the absence of a genuine

issue of material fact as to a dispositive issue.  Celotex Corp. v. Catrett, 477 U.S. 317, 323

(1986).  If the movant is able to establish a prima facie basis for summary judgment, the burden of production shifts to the party opposing summary judgment who must produce evidence establishing the existence of a factual dispute that a reasonable jury could resolve in her favor.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  A party opposing a properly supported motion for summary judgment may not rest upon "mere allegations or denials" asserted in his pleadings, Rexnord Holdings, Inc. v. Bidermann, 21 F.3d 522, 525-26 (2d Cir. 1994), or on conclusory allegations or unsubstantiated speculation. Scotto v. Almenas, 143 F.3d 105, 114 (2d Cir. 1998).

With these standards in mind, the Court will address the pending motions.

**III.    DISCUSSION**

**a.    Stipends**

Defendant moves for summary judgment on Plaintiff's First Cause of Action claiming that the Union improperly required him to submit weekly schedules as a condition to receiving a stipend.  Plaintiff has not opposed this portion of Defendant's motion.[3]

As a general matter, Unions are permitted to adopt and enforce reasonable rules and regulations.  See 29 U.S.C. § 411(a); see also United Steelworkers of America, AFL-CIO v. Sadlowski, 457 U.S. 102, 111 (1982).  Local 1104's requirement that business agents submit weekly schedules as a condition to receiving a stipend is reasonably related to the Union's interest in ensuring that Union monies are being used to promote the objectives and

---

[3] Pursuant to N.D.N.Y.L.R. 7.1(b)(3), "[w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any papers as this Rule requires shall be deemed as consent to the granting or denial of the motion, as the case may be, unless good cause is shown."

interests of its members.  See Local 1104 Bylaws at Art. 18, § 3(b).  Plaintiff's objection is that requiring him to submit weekly schedules may cause him to admit to violating federal immigration laws that preclude him, as a holder of an F-1 student visa, from working more than twenty hours per week.  Plaintiff's concern that completing a weekly schedule may cause him to admit that he is violating federal immigration laws does not render the Union's requirement unreasonable or unlawful.  Absent any evidence that the requirement to submit weekly schedules is being applied in a discriminatory manner, interferes with an interest protected by § 101(a) of the Labor-Management Reporting and Disclosure Act of 1959 (LMRDA),[4] or is otherwise unlawful (of which there is no such evidence in the record), this claim must be dismissed.

### b.    Suspension

Defendant also moves for summary judgment dismissing Plaintiff's remaining claims on the ground that he received all process that he was due.  Plaintiff cross-moves for summary judgment on these claims contending that there was insufficient evidence of his guilt, the prosecutor did not question him prior to the trial, he did not receive adequate or proper notice of the charges, he was convicted of offenses that do not apply to him, and the appellate body was biased.

Article 19 of the CWA Bylaws provide that members "may be fined, suspended or expelled for any of the acts enumerated in Article XIX of the CWA Constitution."  Article XIX,

---

[4] Plaintiff fails to articulate how this rule implicates: (1) equal rights and privileges of union members to nominate candidates, vote in elections or referendums of the union, attend membership meetings, or participate in the deliberations and voting upon the business of such meetings, see § 101(a)(1); (2) members' right to meet and freely assemble with other members, express view, arguments or opinions, or express views concerning candidates in an union election, see § 101(a)(2); or (3) any other provision of the LMRDA.

Section 1, paragraph (i) provides that a member may be fined, suspended and/or expelled "[f]or such other offenses, equally serious, which tend to bring the Union or Local thereto into disrepute."

A member being brought up on charges has the right to receive written charges. See Art. XX, Sec. 2.  The member has the right to a trial before an unbiased court composed of at least three and not more than seven randomly selected Local members.  Id. at Sec. 3(a)(1).  The charges are prosecuted by a prosecutor who is a member of the Local.  Id. at Sec. 3(a)(2).  The prosecutor is "to assist the accuser in the trial and the presentation of evidence."  Id.  The prosecutor is to investigate the matter before trial to determine whether there is probable cause to proceed.  Id.  If the prosecutor determines that probable cause exists, the accused is entitled to a speedy trial upon due notice.  Id. at Sec. 3(a)(3).  The accused has the right to select a Local member as counsel, produce witnesses, present documentary evidence, be heard on his own behalf, and cross-examine witnesses.  Id. at Sec. 3(a)(4).

## 1.    Probable Cause Determination

Plaintiff contends that his due process rights under § 101(a)(5) of the LMRDA were violated because the prosecutor failed to interview him before making a determination that probable cause existed to proceed to trial.  Plaintiff points to no legal authority requiring that the prosecutor interview him as part of the investigation leading up to the determination of probable cause.  The prosecutor's failure to interview Plaintiff before the trial did not interfere with Plaintiff's rights to: (1) notice of the charges; (2) reasonable time to prepare his defense; or (3) a full and fair hearing, see 29 U.S.C. § 411(a)(5), or otherwise violate any due process rights he may have.  As an example, persons accused of federal crimes do not have the right

to appear before a grand jury that is deciding whether probable cause exists to issue an indictment.  United States v. Ruiz, 894 F.2d 501, 505 (2d Cir. 1990); United States v. Ciambrone, 601 F.2d 616, 623 (2d Cir. 1979).  As the Second Circuit has noted in the context of criminal proceedings, "a prosecutor is not . . . obligated to search for and submit to a grand jury evidence favorable to the defense or negating guilt. . . ."  Ciambrone, 601 F.2d at 622.  The Court finds that these principles equally apply here and compel the conclusion that the Union prosecutor's failure to interview Plaintiff prior to determining whether probable cause existed did not violate his statutory rights.

### 2.    Trial

Plaintiff next contends that the charges against him did not constitute due notice because they were overbroad and failed to specify the specific section of Article XIX that he is alleged to have been violated.

The LMRDA guarantees the right to a "full and fair hearing."  29 U.S.C. § 411(a)(5). "The guarantee of a 'full and fair' disciplinary hearing does not require a union to provide the 'full panoply of procedural safeguards' necessary in a criminal case but only that the hearing comport with the fundamental and traditional concepts of due process."  Marshall v. Am. Fed. of Gov't Employees, AFL-CIO, 996 F. Supp. 1319, 1326-27 (W.D. Okla. 1997) (quoting Tincher v. Piasecki, 520 F.2d 851, 854 (7th Cir. 1975)); see also Wildberger v. Am. Fed. of Gov't Employees, AFL-CIO, 86 F.3d 1188, 1193 (D.C. Cir. 1996).  The LMRDA entitles Plaintiff to due notice of the charges against him, the production of some evidence at the hearing to support the charges, that the charges be supported by some evidence, Vars v. Int'l Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, 320 F.2d 576, 578 (2d Cir. 1963) ("[I]mplicit in the requirement of a full and fair hearing is the requirement

that there be some evidence to support the charges made."), an opportunity to confront and

rebut the evidence, and an unbiased tribunal.  See Tincher, 520 F.2d at 854.

Here, by letter dated March 10, 2009, Plaintiff was advised that a trial would

commence on Wednesday, March 25, 2009 on the charges brought by Executive Vice

President Kathleen Sims.  See Compl. at Ex. 9.  The letter included a copy of the charges,

advised Plaintiff of the location of the trial, and also advised him of his right to counsel, to

produce witnesses and present documentary evidence, to be heard on his own behalf, and to

cross-exaime witnesses.  Plaintiff was provided with a copy of the letter of complaint

submitted to the Union by the complainant, Kathleen Sims.  In her letter, Sims complained

that she "was deliberately shoved twice and punched in the shoulder by Utku Balaban,

Business Agent - Binghamton."  Def.'s Ex. I.  Sims's letter asks that Plaintiff be immediately

removed from office and that the Union investigate the incident.  Sims also specifically claims

that "Utku Balaban has violated Article XIX Section 1 c, d, and i.  Balaban has violated CWA

policies against workplace violence, section 4 of 2/13/1999 CWA policy on discrimination and

brings the Local into disrepute due to his inability to keep himself out of the crime blotters."

Sims, therefore, asked that "the Local receive [her] charges against [Plaintiff] through the

Union's internal procedures."  Attached to the letter were: (1) a statement from Tina Traska,

a witness to the incident; (2) an incident report by the Binghamton City Police; (3) Sims's

supporting deposition given to the police; (4) the criminal information filed against Plaintiff for

harassment in the second degree; and (5) hospital records pertaining to Sims's injury from

the assault.

The information in the March 10, 2009 correspondence provided Plaintiff ample

notice of the charges against him and provided sufficient information to enable him to

prepare a defense.  Accordingly, the Court finds no due process violation in the notice provided to Plaintiff.

Plaintiff next contends that there was insufficient evidence submitted at trial to sustain a violation of Article XIX.  The Court disagrees.  The prosecutor introduced the testimony of the victim, Sims, and a witness, Traska.  The prosecutor also introduced the police reports, orders of protection, and Sims's hospital records.  This evidence provided a sufficient basis upon which the trial court could have concluded that Plaintiff violated Article XIX(d)[5] and/or (i).[6]

Plaintiff also argues that he was wrongfully convicted of violating the policy against workplace violence and that such a policy is inapplicable to him.  The undisputed evidence in the record is that the evidence supported a conviction, and Plaintiff was convicted, for violating Article XIX.  Engaging in workplace violence, whether set forth in a written policy or not, is conduct that tends to bring the Union or Local into disrepute.[7]

Plaintiff's next argument is that there was insufficient evidence to convict him of Article XIX, Sec. 1, paragraph (c) - willfully violating the Constitution of the Union, Local

---

[5] Section (d) allows for discipline for "[d]isobeying or willfully failing to comply with any lawful decision or order of the Union or Local."  There was testimony at the trial that the Local President had directed the Binghamton office to retain some membership cards on hand, that Plaintiff demanded all of the membership cards, that Sims and Traska advised Plaintiff of the President's directive, that Plaintiff was advised of other means to obtain additional membership cards, and that Plaintiff assaulted Sims in his effort to obtain all the membership cards.  This conduct could be seen to be in violation of the President's order.

[6] Section (i) allows for discipline for "such other offense, equally serious, which tend to bring the Union or Local thereof into disrepute."  There evidence was that Plaintiff, a Union business agent assaulted a Union employee, resulting in the filing of criminal charges, the issuance of an order of protection, and injury to Sims.  It was not unreasonable for the trial court to conclude that criminal conduct by a business agent "tend[s] to bring the Union or Local . . . into disrepute."

[7] In his memorandum of law, Plaintiff concedes that assaulting a local union officer is "a morally reprehensible act."  Pl.'s Mem. of Law at 15.

Bylaws or Rules.  Whether evidence existed to convict him of paragraph (c) is irrelevant because, for the reasons states, there was ample evidence to convict him of paragraphs (d) and/or (i).

Plaintiff also seems to argue that the outcome of the criminal proceedings should be taken into consideration with respect to the Union trial proceedings.  Plaintiff's criminal proceedings apparently resulted in an adjournment in contemplation of dismissal.  Contrary to Plaintiff's contention, an adjournment in contemplation of dismissal ("ACOD") is not a favorable termination of the criminal charges against him, see Fulton v. Robinson, 289 F.3d 188, 196 (2d Cir. 2002), and, thus, such a disposition of his criminal charges are irrelevant to the Union charges against him.  An ACOD is not a finding of innocence, but leaves open the question of the accused's guilt.  Id.  The criminal case is not dismissed because of a lack of evidence, but "in the furtherance of justice."  N.Y. Crim. Proc. L. § 170.55(2).  As a practical matter, an adjournment in contemplation of dismissal "is a bargained-for dismissal of the criminal case."  Rothstein v. Carriere, 373 F.3d 275, 287 (2d Cir. 2004).

The disposition of the criminal charges also is irrelevant because of the different standard of review.  A conviction on criminal charges may only be found beyond a reasonable doubt.  Such a high burden of proof is not required to find a violation of Article XIX.  Vars v. Int'l Broth. of Boilermakers, Iron Shipbuilders, Blacksmiths, Forgers and Helpers, 320 F.2d 576, 578 (2d Cir. 1963) ("[I]mplicit in the requirement of a full and fair hearing is the requirement that there be some evidence to support the charges made.").

### 3.    Appeal

Plaintiff's next contention is that his appeal to the Executive Board deprived him of the right to a full and fair hearing because: (1) a member of the Executive Board brought

charges against Plaintiff; (2) another member of the Executive Board (the President) initially suspended Plaintiff; and (3) a third member of the Executive Board was the official recorder of the trial.

The LMRDA does not specifically address appeals and the Court has not found any cases guaranteeing any specific rights on an internal Union appeal (or to an internal Union appeal).[8]  Assuming, without deciding, that the LMRDA requires an unbiased internal appellate review body, the Court finds that the inclusion of Kathleen Sims (the person who filed the charges against Plaintiff) and George Bloom (the Local President who participated in Plaintiff's pre-hearing suspension) on the reviewing body rendered that body biased.[9] See Falcone v. Dantinne, 420 F.2d 1157, 1165-66 (3d Cir. 1969).  Any harm caused by this, or any other alleged bias by the Executive Board, was not prejudicial to Plaintiff's rights under the LMRDA because: (1) there is no evidence of bias in the Union trial court; (2) the appeal to the Executive Board was not a de novo review of the case; (3) Plaintiff has not produced any evidence of actual prejudice;[10] and (4) Plaintiff has available to him two additional levels of review by persons unfamiliar with the charges against him.[11]  These additional layers of review are sufficient to correct any bias by the Local Executive Board and, thus, satisfy due process concerns.

_____

[8] The LMRDA only guarantees a "full and fair hearing."

[9] Neither Sims nor Bloom were members of the Union trial court.

[10] The undisputed evidence is that the appellate body sustained the charges, but unanimously reduced the penalty.

[11] Plaintiff has neither exhausted these avenues of appeal nor demonstrated that such appeals would be futile.

**IV.      CONCLUSION**

For the foregoing reasons, Defendant's motion for summary judgment is

GRANTED, Plaintiff's cross- motion for summary judgment is DENIED, and the Complaint is

DISMISSED in its entirety.

IT IS SO ORDERED.

Dated: October 7, 2009

_____
Thomas J. McAvoy
Senior, U.S. District Judge